No. 2--04--0671                    filed: 3/23/06

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 86--CF--106 |
| BENNIE STARKS, | ) ) ) | Honorable Christopher C. Starck, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

_____

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Bennie Starks, appeals from an order of the trial court denying his motion for a new trial on his convictions of one count of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, pars. 12--14(a)(2), (a)(5) (now 720 ILCS 5/12--14(a)(2), (a)(5) (West 2004))) and one count of attempted aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 8--4(a) (now 720 ILCS 5/8--4(a) (West 2004))). On appeal, defendant contends that the trial court erred in denying his motion because new DNA evidence establishes that he was not physically connected to the crimes and, therefore, demonstrates his actual innocence. Defendant also contends that the trial court erred in denying his motion for a new trial because the State presented false evidence and made untrue or incorrect arguments to the jury which prevented defendant from being able to

confront witnesses against him in violation of his due process rights and right to confrontation under the sixth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VI, XIV).  For the reasons set forth below, we reverse the denial of the motion, reverse the convictions of aggravated criminal sexual assault and attempted aggravated criminal sexual assault, and remand for a new trial.

In 1986, defendant was convicted of two counts of aggravated criminal sexual assault, one count of attempted aggravated criminal sexual assault, one count of aggravated battery, and one count of unlawful restraint for the attack on a 68-year-old woman.  Defendant was sentenced to 60-year concurrent imprisonment terms for the two aggravated criminal sexual assault convictions, along with concurrent lesser sentences for the other convictions.  This matter is now before this court for the second time.  Other issues were addressed by this court in our decision on direct appeal. People v. Starks, No. 2--86--1021 (1988) (unpublished order under Supreme Court Rule 23).  The present appeal addresses issues different from those in the prior Rule 23 order.  All facts necessarily related to the issues set forth in this opinion, including those facts relevant to defendant's right to a fair trial and the use of serology in this case, are stated in this opinion. (The other issues previously raised by defendant, with a recitation of all facts necessary to understand that prior ruling, are detailed in People v. Starks, No. 2--86--1021.)

During the trial the victim testified that on the night of January 18, 1986, at about 9 p.m., she walked outside her house wearing her bathrobe and underwear to get some fresh air.  When she walked to the corner, she heard a noise and saw defendant come toward her.  The victim started to run away but defendant ran toward her, grabbed her neck from behind, threw her down on the grass, and repeatedly punched her all over her face.  The

victim testified that defendant then pulled her feet-first down to a ravine, hitting her all over her body as she struggled to get up.

The victim also testified that, at the bottom of the ravine, defendant took off the victim's underpants and sexually assaulted her. However, the victim also testified that, before defendant sexually assaulted her, defendant did not take off any of her clothing and that defendant did not do anything with her clothing when he sexually assaulted her. In a seemingly further conflicting way, the victim said defendant just took off the victim's underwear and threw it on the ground. Defendant kept hitting her. The victim felt defendant's penis in her vagina three or four times because she kept moving around. The victim testified that, after defendant sexually assaulted her, he put his penis on the victim's cheek and told her three times to "give him pussy," demonstrating the kissing movement he wanted her to do with her mouth. The victim pulled on defendant's penis twice, causing defendant to exclaim "oh." Then defendant left. During the attack, defendant bit the victim on her shoulder and tore off her watch.

Illinois Department of Public Aid worker Blanche Gonzalez testified that she spoke with the victim shortly after the attack. During this conversation, the victim told Gonzalez that she accused defendant of having sexual intercourse with her but that it was not true. The victim told Gonzalez that the reason she told police that she was sexually assaulted was "because he was going to pay for beating her up." The victim told Gonzalez that "[h]e didn't want to have any--didn't want to rape [her], he wanted oral sex." This prior inconsistent statement of the victim was refuted by the testimony of the State's forensic serologist, Sharon Thomas-Boyd, and attenuated by the court's denial of defendant's ability to question the victim about her sexual relationships and the State's argument that the

scientific evidence was unrebutted and established that defendant had intercourse with the victim.

Officer William Genel testified that he arrived at the scene of the crimes after receiving a radio dispatch. The victim was shaking and crying, and she was muddy, with bruises all over her body. The victim was taken to the hospital. At daylight, Genel searched the ravine for evidence and found underwear, a black trench coat, gloves, a scarf, a watch, and a watchband.

As noted, the State's forensic serologist testified that she examined a collection kit, which included saliva, blood, and hair samples from the victim and defendant. Thomas-Boyd also examined the crotch of the victim's underwear and a vaginal swab and smear obtained from the victim. Thomas-Boyd determined that the victim was a nonsecretor and defendant was a secretor. Thomas-Boyd testified she could not exclude defendant as a possible source of the semen, a fact that was later called into question.

Dentist and forensic odontologist Russell Schneider testified that he examined a large bite mark on the victim's shoulder and compared it to defendant's teeth and X rays of defendant's upper and lower bite. Upon comparing the bite to the photo of the victim's bite-mark bruise with a point by point system, Schneider opined that it was defendant who bit the victim.

Defendant was found guilty on all counts and sentenced to 60 years' imprisonment (including concurrent sentences for the various convictions). Count V (unlawful restraint) was vacated by the trial court after the original jury verdict, as being a lesser-included offense of the other charges. However, in this court's referenced Rule 23 order, People v. Starks, No. 2--86--1021 (1988), count II (aggravated criminal sexual assault) was vacated,

the sentence for count III (attempted aggravated criminal assault) was reduced to 15 years' imprisonment, and the sentence for count IV (aggravated battery) was reduced to 5 years' imprisonment.  In the process, this court affirmed the convictions on counts I, III, and IV. Although defendant was also found guilty and sentenced for aggravated battery,  that conviction is not subject to this appeal.

After defendant's convictions were affirmed on direct appeal, on March 15, 2002, defendant filed a motion seeking a new trial and other relief, based on postconviction DNA tests excluding him as the source of semen that had been found on the victim's underwear and attributed to defendant at trial.  On April 19, 2004, the trial court denied defendant's motion.

As a result of defendant's expert's DNA report, defendant's counsel discovered that the 1986 serology test results in this case were contrary to the trial testimony of the State's serologist, Sharon Thomas-Boyd, because the serology results excluded defendant as the donor of semen from the victim's vaginal swab and underwear.  Defendant filed a motion for reconsideration based on this serological exclusion and the State's use of the serologist's incorrect and questionable testimony to obtain the criminal convictions. (Defendant submitted the State's serologist affirmatively knew, or should have known, that the serology test results excluded defendant from being the semen donor in this case.) After considering the evidence admitted at trial, new exhibits submitted in support of defendant's motion, and counsels' arguments, the trial court denied the motion for reconsideration on June 19, 2004.  Defendant filed his notice of appeal from that order on June 30, 2004.

The State argues that defendant's appeal must be dismissed because the trial court did not have jurisdiction over defendant's motion for a new trial, and, in the alternative, because the motion was not a proper postconviction petition. Thus, the State argues, the trial court's order is not an appealable order and this court has no jurisdiction to hear this appeal. Because of the reasons that follow, we deny the State's request to dismiss defendant's appeal for lack of jurisdiction.

Section 116--1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116--1 (West 2002)) provides that motions for a new trial must be filed within 30 days following the entry of a verdict or finding of guilty. The time limitation is mandatory and not directory. People v. Dzielski, 130 Ill. App. 2d 581, 586 (1970). In the present case, there is no dispute defendant filed his "motion for a new trial" many years after he was found guilty in 1986. Therefore, the "motion for a new trial" filed in March 2002 cannot be construed as a timely motion for a new trial since it was filed more than 30 days after the jury's verdict. We agree with the trial court as to the untimeliness of the motion taken as a motion for a new trial.

As defendant seems to acknowledge, to obtain jurisdiction to address the motion, the trial court should have recharacterized the motion as a postconviction petition. The Post-Conviction Hearing Act (Act) provides:

"A trial court that has received a petition complaining of a conviction or sentence that fails to specify in the petition or its heading that it is filed under [the Act] need not evaluate the petition to determine whether it could otherwise have stated some grounds for relief under this Article." 725 ILCS 5/122--1(d) (West 2002).

Even if the court need not do so, by the strongest of implications, the court also may do so. People v. Shellstrom, 216 Ill. 2d 45, 51 (2005). The only logical construction that

would preserve the trial court's jurisdiction of defendant's motion following sentencing was to treat the inappropriately captioned motion as a postconviction petition. This construction was supported by the facts that the motion raised constitutional issues and was made after sentencing. See People v. Washington, 171 Ill. 2d 475, 489 (1996) ("a claim of newly discovered evidence showing a defendant to be actually innocent of the crime for which he was convicted is cognizable as a matter of due process"). Thus, the trial court did not abuse its discretion in impliedly construing defendant's "motion for a new trial" as a petition under the Act. See Shellstrom, 216 Ill.2d at 51. Hereinafter, for consistency, we will refer to defendant's motion as a petition.

Pursuant to section 116--3 of the Code of Criminal Procedure, a defendant may bring a motion for DNA testing subsequent to his trial and conviction. 725 ILCS 5/116--3 (West 2002). To be entitled to DNA testing, the defendant must establish a prima facie case showing that "identity was [a] central issue at trial and that the evidence to be tested was subject to a sufficiently secure chain of custody." People v. Johnson, 205 Ill. 2d 381, 393 (2002). The trial court then must determine whether the evidence is new and materially relevant to the defendant's claim of actual innocence. Johnson, 205 Ill. 2d at 393. After undertaking its evaluation, if the trial court determines that testing is appropriate, it should order same. See Johnson, 205 Ill. 2d at 393.

If DNA evidence is truly exculpatory, a defendant's conviction should be vacated and the defendant should be released, or some other similar resolution should be had. If the results are neither truly exculpatory nor inculpatory, i.e., they are somewhere in-between or are a nonmatch, which is the situation in the instant case, this may provide a basis for a defendant to file a postconviction petition asserting a claim of actual innocence

based on newly discovered evidence. People v. Dodds, 344 Ill. App. 3d 513, 519 (2003). In order to support a claim of actual innocence in a petition for postconviction relief, a defendant must present new, noncumulative evidence material to the claim that could not have been obtained through due diligence at the time of trial. People v. Henderson, 343 Ill. App. 3d 1108, 1120 (2003). Such evidence of actual innocence has to be "so conclusive that it would probably change the result on retrial." Henderson, 343 Ill. App. 3d at 1120.

There are three stages of review provided for under the Act. 725 ILCS 5/122--1 et seq. (West 2002). At the first stage, the trial court may dismiss, without any input from the State, the defendant's postconviction petition as frivolous or patently without merit. People v. Boclair, 202 Ill. 2d 89, 99 (2002). If a petition proceeds to the second stage, the trial court may appoint counsel for the defendant, who then has an opportunity to amend the petition. Boclair, 202 Ill. 2d at 100. If the State fails to file a motion to dismiss, or the trial court denies same, and the trial court concludes that the petition is supported by the trial record and any accompanying affidavits and makes a substantial showing of a constitutional violation, the petition proceeds to the third stage at which time the trial court conducts an evidentiary hearing on the merits. Johnson, 205 Ill. 2d at 389. At the third stage, the trial court must determine whether the new evidence demonstrates that the defendant is entitled to relief. Dodds, 344 Ill. App. 3d at 520.

Accordingly, the trial court should have determined whether the nonmatch DNA evidence is so conclusive that it would probably change the outcome on retrial. See Dodds, 344 Ill. App. 3d at 520. Dismissal of a postconviction petition following an evidentiary hearing is reviewed for manifest error. People v. Pitsonbarger, 205 Ill. 2d 444, 456 (2002). "Manifest error" is error that is clearly evident, plain, and indisputable, for

purposes of our review of the trial court's judgment on a postconviction petition.  People v. Morgan, 212 Ill. 2d 148, 155 (2004).  We discern such error here.

Defendant contends that the trial court erred in dismissing his postconviction petition because new DNA evidence demonstrates that the result upon a retrial would be different.  In this regard, defendant argues that, at trial, the State relied heavily upon the semen evidence but, now, it maintains that the semen evidence was only of minor importance.  Ultimately, defendant maintains that the evidence at his trial was closely balanced, as demonstrated by the State's reliance on the semen evidence and the fact that there was no other evidence proving aggravated or attempted aggravated criminal sexual assault by defendant except for the victim's testimony, which was impeached with a prior inconsistent statement that she fabricated the allegation of rape.  Moreover, defendant has now presented evidence which demonstrates that the State's expert witness presented serology evidence which was untruthful or inaccurate.  According to defendant, had the jury heard that the semen on the victim's underpants was not that of defendant, the result of his trial would have been different.  Thus, defendant maintains that the trial court erred in dismissing his postconviction petition.

The State contends that simply because defendant's semen was not on the victim's underwear does not exonerate him of the crimes.  The State argues that the new DNA evidence does not exculpate defendant because his convictions were not dependent solely upon the semen evidence.  Rather, the State maintains that it merely argued at trial that the presence of defendant's semen was one of the indications of his guilt. The State reiterates that it did not rely solely upon the semen evidence to convict defendant.  For example, there was evidence that a bite mark on the victim matched defendant's dental records,

defendant's overcoat was at the scene of the crimes, defendant had scratch marks that matched marks the victim described inflicting, and the victim identified defendant as her attacker. According to the State, even without the semen evidence, the evidence against defendant was overwhelming.

The determining factor is whether the DNA results in this case go to the ultimate issue: whether defendant actually sexually assaulted the victim, or whether he was wrongfully accused by the victim. See People v. Waters, 328 Ill. App. 3d 117, 128 (2002).

We find that the DNA results do, indeed, go to the ultimate issue. The victim's impeaching prior inconsistent statement that she was not sexually assaulted, coupled with the State's own expert's incorrect testimony regarding the serology results, cast serious doubt as to whether defendant committed aggravated or attempted aggravated criminal sexual assault. The DNA results as presented are probative of a factual situation that is so different from the victim's testimony that it resulted in a finding by the trial court which was manifest error and the outcome on retrial would probably be changed.

Defendant also argues in his petition that his case was damaged by the State's unconstitutional and inappropriate use of the rape shield statute. Defendant argues that the use of the rape shield statute offended his due process rights and right to confrontation under the sixth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VI, XIV). The rape shield statute absolutely bars evidence of the alleged victim's prior sexual activity and reputation, subject to two exceptions: (1) evidence of past sexual activities with the accused, offered as evidence of consent; and (2) where the admission of such evidence is constitutionally required. People v. Santos, 211 Ill. 2d 395, 401-02 (2004). Admission of such evidence is constitutionally required under the recited amendments to

the constitution where the exclusion of the evidence prevents the defendant from presenting his theory of the case. See People v. Sandoval, 135 Ill. 2d 159, 175 (1990). In other words, "[i]f the evidence is probative, the statute's protection yields to constitutional rights that assure a full and fair defense." People v. Hill, 289 Ill. App. 3d 859, 863 (1997).

The State argues that the semen found on the victim's underwear was not materially relevant to defendant's claim of innocence and would not have advanced his cause at the time of trial. We disagree.

The State used the rape shield statute to bar testimony on defendant's behalf despite the combination of the victim's impeachment by her admission she had not been sexually assaulted and the untruthful or incorrect testimony of the State's own expert regarding the serology results. In effect, the State has improperly turned the rape shield statute on its head and made it a sword to thwart defendant's constitutional rights of confrontation (rather than a shield to protect the victim's past sexual history). If defendant had been allowed to present evidence to the jury that the serology evidence excluded him and to present evidence of other possible sperm donors, the result of the trial likely would have been different. We determine that the serology results as they pertained to defendant, the use of incorrect expert testimony, the impeachment of the victim, and the preclusion of a defense by the offensive use of the rape shield statute, resulted in the denial of defendant's constitutional rights so as to be more than an adequate basis to reverse the trial court's dismissal of defendant's postconviction petition for a new trial.

Defendant also argues on appeal that the dismissal of his postconviction petition should be reversed as a result of the ineffective assistance of counsel. Having determined that the actions of the State were so compellingly contrary to defendant's constitutional

rights so as to reverse the trial court's ruling on defendant's postconviction petition, we find the argument pertaining to the ineffective assistance of counsel to be moot.

The award of a new trial in this case is necessary, based upon the noncumulative evidence of the DNA test results and the probability of a different result upon retrial because of this evidence. During the first trial, the jury was incorrectly advised that the seminal fluid found on the victim's underwear and in the victim's vaginal fluid could not be excluded as being defendant's. Therefore, the jury was provided incorrect testimony by the State's own expert witness regarding the serology results as they related to defendant. The jury was not advised, as a jury now can be, that defendant could not have been the source of that semen. Defendant can now exercise his constitutional right to confront all witnesses. New DNA evidence would now be available to defendant at a new trial pursuant to section 116--3 (725 ILCS 5/116--3 (West 2004)) as well.

Because it was manifest error for the trial court to dismiss defendant's petition and deny him a new trial, we reverse the dismissal of defendant's postconviction petition and order that he be given a new trial on the charges of aggravated criminal sexual assault and attempted aggravated criminal sexual assault. Only by granting defendant a new trial, under these circumstances, can we be assured that the interests of justice will prevail.

The judgment of the circuit court of Lake County is reversed, the convictions of aggravated criminal sexual assault and attempted aggravated criminal sexual assault are reversed, and the case is remanded for a new trial.

. Reversed and remanded.

BOWMAN and CALLUM, JJ., concur.