In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1401

JOSEPH PRICE,

*Petitioner-Appellant,*

*v.*

GUY PIERCE,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 07 C 50111—**Frederick J. Kapala**, *Judge.*

ARGUED FEBRUARY 22, 2010—DECIDED AUGUST 13, 2010

Before KANNE and WILLIAMS, *Circuit Judges*, and
SPRINGMANN, *District Judge.**

KANNE, *Circuit Judge.* While incarcerated for other
crimes, Joseph Price was convicted in Illinois state court
of three counts of aggravated sexual assault for beating
and raping a fellow inmate. For these convictions he

* Hon. Theresa L. Springmann, District Judge for the Northern
District of Indiana, sitting by designation.

was sentenced to three consecutive 35-year terms of imprisonment. After bouncing around the Illinois court system for ten years on numerous appeals and motions, Price finally arrived in the federal courts by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court dismissed his petition as time barred, rejecting Price's argument that a motion under Illinois Statute 725 ILCS 5/116-3 was a collateral attack on the judgment against him that tolled the one-year statute of limitations for filing a habeas petition. We now affirm.

## I. BACKGROUND

In November 1995, while incarcerated at Dixon Correctional Center in Illinois, Price was charged with five counts of aggravated sexual assault of two fellow inmates. In April 1996, a jury found him guilty on the three counts related to one of the inmates, but not guilty on the other two counts related to the other inmate. The trial court sentenced Price to three consecutive 35-year terms of imprisonment. Price filed a motion to reconsider and for a new trial in October 1996. More than one year later, the trial court denied his motions. Almost two years after that, in October 1999, the Appellate Court of Illinois affirmed his convictions and sentence. Price then filed a petition for leave to file an appeal with the Supreme Court of Illinois, which that court denied on February 2, 2000. Price's window for filing a petition for a writ of certiorari closed 90 days later in May 2000. The one-year statute of limitations for filing a petition for a writ of habeas corpus expired one year later in May 2001—unless Price is correct that it was tolled.

Moving back in time, while Price's petition for leave to file an appeal was pending with the Supreme Court of Illinois, in November 1999 he filed a motion for forensic testing under 725 ILCS 5/116-3 ("DNA Motion"). One year later, the state trial court dismissed the DNA Motion as untimely. The Appellate Court of Illinois disagreed, and it reversed and remanded the case in 2003 with instructions to the trial court to determine the propriety of allowing three different DNA tests. In January 2005, the trial court issued an order denying the remanded DNA Motion on the merits. Almost eighteen months later, the Appellate Court of Illinois affirmed the trial court, and on September 27, 2006, the Supreme Court of Illinois denied Price's petition for leave to file an appeal. In May 2007—six years after the judgment against Price became final, but just eight months after his DNA Motion was finally settled—Price filed his pro se federal habeas petition, which the federal district court denied as untimely. The district court did, however, grant a certificate of appealability on the question of "whether the one-year limitations period imposed by 28 U.S.C. § 2244(d)(1)(A) was tolled under § 2244(d)(2) during the period of time in which petitioner's motion for forensic testing was pending in state court." We now address that question.

## II. ANALYSIS

We review *de novo* the district court's dismissal of Price's habeas petition as untimely. *Simms v. Acevedo*, 595 F.3d 774, 777 (7th Cir. 2010). In general, a prisoner may

petition for a writ of habeas corpus only after exhausting all possible state remedies. 28 U.S.C. § 2254(b)(1)(A). The petition must be filed within one year after "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . ." 28 U.S.C. § 2244(d)(1)(A). The one-year statute of limitations can be tolled, however, if the petitioner applies for "State post-conviction or other collateral review" of the judgment. *Id.* (d)(2). Price argues that his motion under Illinois Statute 725 ILCS 5/116-3 qualifies as "other collateral review."

In *United States v. Addonizio* the Supreme Court identified three kinds of actions or claims that fell within "the established standards of collateral attack": a claim that a proceeding violated defendant's constitutional rights, that the imposed sentence fell outside statutory limits, or that "the proceeding was . . . infected with [an] error of fact or law of the 'fundamental' character that renders the entire proceeding irregular and invalid." 442 U.S. 178, 186 (1979). Price urges us to find that a motion under § 116-3 falls under the latter category—that is, that a motion under § 116-3 raises the question of a defendant's actual innocence, which is an error of "fundamental" character.

We have previously discussed the characteristics of a collateral review of a judgment, as distinct from a direct review. We explained that "[p]ost-conviction appeals . . . provide an independent and civil inquiry into the validity of a conviction and sentence, and as such are generally limited to challenges to constitutional, jurisdictional, or other fundamental violations that occurred at trial."

*Graham v. Borgen*, 483 F.3d 475, 479 (7th Cir. 2007). The federal habeas corpus statute is the "archetypical collateral review." *Id.* at 479-80. In assessing whether a particular state procedure constitutes collateral review of the judgment, "we look to how a state procedure functions, rather than the particular name that it bears." *Id.* at 479.

Section 116-3, titled "Motion for fingerprint, Integrated Ballistic Identification System, or forensic testing not available at trial regarding actual innocence," provides in relevant part:

> (a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint, Integrated Ballistic Identification System, or forensic DNA testing, including comparison analysis of genetic marker groupings of the evidence collected by criminal justice agencies pursuant to the alleged offense, to those of the defendant, to those of other forensic evidence, and to those maintained under subsection (f) of Section 5-4-3 of the Unified Code of Corrections, on evidence that was secured in relation to the trial which resulted in his or her conviction, and:
>
> > (1) was not subject to the testing which is now requested at the time of trial; or
> >
> > (2) although previously subjected to testing, can be subjected to additional testing utilizing a method that was not

scientifically available at the time of trial that provides a reasonable likelihood of more probative results. Reasonable notice of the motion shall be served upon the State.

(b) The defendant must present a prima facie case that:

(1) identity was the issue in the trial which resulted in his or her conviction; and

(2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect.

(c) The trial court shall allow the testing under reasonable conditions designed to protect the State's interests in the integrity of the evidence and the testing process upon a determination that:

(1) the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence even though the results may not completely exonerate the defendant;

(2) the testing requested employs a scientific method generally accepted within the relevant scientific community.

Price urges us to find that a motion under this statute is a collateral attack on his conviction because the trial

court, in deciding the DNA Motion, will have to determine that identity was at issue in his trial and that the evidence gleaned from the DNA test is "materially relevant" to his claim of innocence. (Appellee's Br. at 12-13.) Those determinations, so goes the argument, necessarily require the court to determine that there was a fundamental error of fact—that is, the defendant's innocence—and therefore a motion under § 116-3 should be considered a collateral review of the judgment.

This is the first occasion we have had to consider whether a motion seeking DNA testing under 725 ILCS 5/116-3 is a "collateral review" of a judgment. We naturally turn first to Illinois state courts to see whether Illinois construes a motion under § 116-3 as a collateral attack. *Cf. Graham*, 483 F.3d at 478 ("The Wisconsin courts' own interpretation of the statute is certainly a good place to begin to determine whether the review is direct or collateral."). Price argues that in *People v. LaPointe*, the Supreme Court of Illinois determined that a motion under § 116-3 is a collateral attack. 879 N.E.2d 275 (Ill. 2007). The court in *LaPointe*, while detailing the many legal actions the defendant had filed, said that the defendant "began filing a series of collateral challenges to the conviction." *Id.* at 276. It went on to list and describe the procedural history behind a number of challenges, including a federal habeas corpus petition, a post-conviction petition in state court, and a claim of actual innocence. *Id.* At the tail end of this lengthy procedural history, the court noted that the defendant also filed a motion under § 116-3, arguing that a DNA test would prove his innocence. *Id.*

At first blush, Price's interpretation of *LaPointe* appears to be correct. But we are hesitant to read too much into what appears to be a simple introduction to a complex procedural history rather than a reasoned holding, especially without some affirmative statement or actual analysis by the court on the point in question. Price also points to other Illinois Supreme Court cases that say the DNA testing must "significantly advance" a defendant's claim of actual innocence, *People v. Savory*, 756 N.E.2d 804, 811 (Ill. 2001), and that the trial court should evaluate the evidence introduced at trial and the evidence the defendant is moving to test, *People v. Johnson*, 793 N.E.2d 591, 601 (Ill. 2002). We are uncertain, however, how either of those opinions addresses, much less settles, the questions before us.

We are also hesitant to give too much weight to the Supreme Court of Illinois's passing comment in *LaPointe* because other Illinois court decisions strongly suggest that Illinois does not consider a § 116-3 motion to be a collateral attack. For example, the Appellate Court of Illinois noted in *People v. Price* that a motion under § 116-3 leads only to forensic testing, not a new trial. 801 N.E.2d 1187, 1192-93 (Ill. App. Ct. 2003) (*citing People v. Rokita*, 736 N.E.2d 205, 212 (Ill. App. Ct. 2000)). It went on to note that it "must be cautious not to 'collapse' [its] consideration of defendant's section 116-3 motion and defendant's claim of actual innocence into a single analysis." *Id.* at 1193 (*citing People v. Henderson*, 799 N.E.2d 682, 692-93 (Ill. App. Ct. 2003)).

Further, the court in *Henderson*, which both parties cite in support of their respective positions, clearly perceived

a § 116-3 motion as a mere discovery motion, separate from a claim of actual innocence, which is properly brought under the Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.* 799 N.E.2d at 692; *see also People v. Permanian*, 886 N.E.2d 1028, 1031 (Ill. App. Ct. 2008) ("A section 116-3 order initiates a separate proceeding independent of any claim for post-conviction or other relief."). The *Henderson* court also noted that the standards for reviewing a § 116-3 motion and a claim of actual innocence are different. *Henderson,* 799 N.E.2d. at 692-93.

Even if *Price* and *Henderson* are inconclusive on the issue, the Supreme Court of Illinois's decision in *People v. Shum*, 797 N.E.2d 609 (Ill. 2003), puts the issue to rest. There, the defendant filed a post-conviction petition claiming actual innocence and requesting DNA testing. *Id.* at 614-15. He did not file a separate § 116-3 motion because that section had not yet been made effective. *Id.* at 621. The court did not require the defendant to re-file his request for DNA testing as a § 116-3 motion because his request clearly met the § 116-3 criteria. *Id.* However, the court refused to consider the defendant's claim of actual innocence because the results of the testing were not yet available. *Id.* It was not until after the DNA testing had occurred—a product of the § 116-3 motion—that the defendant's separate claim of actual innocence was ripe.

Our review of the plain language of § 116-3 and the Illinois state court decisions discussing that provision lead us to conclude that a motion under § 116-3 is not a collateral review of the underlying judgment and there-

fore does not toll the statute of limitations for bringing a federal habeas corpus petition under 28 U.S.C. § 2255. Price's argument to the contrary is based on his misunderstanding of the process that accompanies a § 116-3 motion. As the cases discussed above make clear, when a defendant moves under § 116-3 for forensic testing, the best that can happen is that the trial court grants the motion, the tests are performed, and the defendant receives the results. The defendant may choose to use the results of the DNA test in a *separate* post-conviction petition for relief claiming his or her actual innocence, but no hearing automatically follows. Further, nothing in the plain language of the statute or in any of the state court opinions of which we are aware gives the trial court the authority to release a defendant from custody under § 116-3.

Price argues that *People v. Dodds*, 801 N.E.2d 63, 68 (Ill. App. Ct. 2003), and *People v. Starks*, 850 N.E.2d 206, 212 (Ill. App. Ct. 2006), both said that a court should release a defendant if DNA evidence proved to be "truly exculpatory." However, the defendants in both cases had contemporaneously filed motions for post-conviction relief, and neither court expressly found that § 116-3 itself gives a court authority to release a prisoner. *See Dodds*, 801 N.E.2d at 65; *Starks*, 850 N.E.2d at 212 (construing the defendant's untimely "motion for a new trial" as a motion for post-conviction relief under 725 ILCS 5/122-1(d)). In light of the Supreme Court of Illinois's treatment of the issue in *Shum*, 797 N.E.2d 609, we are convinced that it is the motion for post-conviction relief, and not the motion for DNA testing under § 116-3, that

gives an Illinois court the authority to release a prisoner who is subsequently exonerated by DNA evidence.

Price mistakenly argues that in deciding a § 116-3 motion, the trial court must determine whether a defendant is actually innocent, or at least whether it is probable that he might be. Illinois courts have specifically cautioned against considering a defendant's claim of actual innocence when considering a § 116-3 motion. *See, e.g.*, *Henderson*, 799 N.E.2d at 692-93; *Shum*, 797 N.E.2d at 621. To grant relief under § 116-3, a court need not determine that it is *probable* that a defendant is innocent, but rather only that evidence produced from reliable forensic testing has the *scientific potential* to "significantly advance" the defendant's claim of actual innocence. *See People v. Johnson*, 793 N.E.2d 591, 600 (Ill. 2002). Determining whether evidence is materially relevant to a claim of actual innocence is a far cry from determining actual innocence itself; the former is a question about the propriety of allowing discovery, while the latter provides grounds for overturning a conviction.

At least two other circuits have considered state DNA statutes, and the results are divided. The Eleventh Circuit held that Florida's DNA testing statute, Florida Rule of Criminal Procedure 3.853, did not toll the statute of limitations in the Antiterrorism and Effective Death Penalty Act (AEDPA). *Brown v. Sec'y for the Dep't of Corr.*, 530 F.3d 1335 (11th Cir. 2008). The court described Florida's process and its reasoning:

> If the movant is successful, those procedures culminate only in the results of the DNA testing

ordered by the court [being] provided in writing to the court, the movant, and the prosecuting authority. Thus, a Rule 3.853 proceeding involves an application for discovery only, pursuant to which the court lacks authority to order relief from the movant's sentence or conviction based on the DNA test results. If the movant believes those results provide a basis for a successful collateral attack on his judgment of conviction, he may then institute a proceeding under Florida's collateral attack rules and only in that manner secure such relief.

*Id.* at 1337-38 (citations and internal quotation marks omitted). Because the Illinois DNA statute involves a virtually identical procedure to Florida's, our decision here accords with the Eleventh Circuit's in *Brown*.

The Fifth Circuit reached the opposite conclusion regarding Texas's DNA testing statute. In *Hutson v. Quarterman*, 508 F.3d 236 (5th Cir. 2007), the court held that a motion filed under Texas's DNA testing statute, Texas Code of Criminal Procedure article 64.04, was a collateral review of the judgment that tolled AEDPA's statute of limitations. *Id.* at 239. But that decision was specific to Texas's DNA testing rule, which differs in important ways from the procedure that Illinois has established. The *Huston* court described Texas's procedure as follows:

If these requirements [from Texas Code of Criminal Procedure articles 64.01-64.03] are met, the court may order DNA testing. After examining

the results of the testing, the convicting court *shall hold a hearing* and make a finding as to whether it is reasonably probable that the person would not have been convicted had the results been available during the trial of the offense. If the convicting court decides that the finding is favorable to the convicted person under article 64.04, *the court may release the convicted person* on bail pending the conclusion of court proceedings or proceedings under Section 11, Article IV, Texas Constitution, and Article 48.01. Section 11 of Article IV and Article 48.01 give the governor power to pardon and dictate the procedure for pardoning a convicted person.

*Id.* at 238-39 (footnotes and internal quotation marks omitted) (emphasis added). As understood by the Fifth Circuit, Texas's DNA testing procedure provides for an automatic consideration of the testing results that may ultimately lead to a defendant's release from prison. The court also relied on a number of Texas state court opinions that it characterized as equating "the Texas statute providing for post-conviction DNA proceedings with habeas corpus proceedings in that both make a collateral inquiry into the validity of the conviction." *Id.* at 239 (internal quotation marks omitted).

Unlike Texas's procedure, a motion for post-conviction DNA testing in Illinois does not automatically lead to a court's determination of the defendant's actual innocence. Nor does a court have the authority to release a prisoner under § 116-3. Because of these important dif-

ferences, we find the decision in *Hutson* inapposite. *Cf. Brown*, 530 F.3d at 1338.

A few federal district courts have also addressed this issue. *See Wolf v. Carroll*, No. Civ.A. 04-130, 2005 WL 2454889, at *4 (D. Del. Oct. 5, 2005) (holding without discussion that "a motion for post-conviction relief and DNA testing" under Delaware law tolled AEDPA's statute of limitations); *McDonald v. Smith*, No. 02-CV-6743, 2003 WL 22284131, at *5 (E.D.N.Y. Aug. 21, 2003) ("Motions pursuant to [New York's DNA testing statute] are motions to vacate and, therefore, challenge the conviction."). The motions under Delaware and New York law appear to hold the potential to release a prisoner should the DNA evidence come out in the prisoner's favor, similar to the process under Texas law discussed in *Hutson*. Therefore, we find *Wolf* and *McDonald* as inapposite as *Hutson*, and for the same reason.

We note that our decision here should not have the unintended consequence of forcing prisoners to choose between pursuing habeas corpus relief in federal court or DNA testing in state court. *See Hutson*, 508 F.3d at 239-40 (reasoning that "[c]omity . . . dictates that the federal courts give Texas courts the time to review these DNA claims and provide necessary relief without forcing convicted persons to choose between the two systems thereby undermining the remedy the Texas legislature has provided"). As other cases have made abundantly clear, a prisoner who wishes to pursue both federal habeas relief and move for DNA testing under § 116-3 may timely file his or her habeas petition and then move

to stay the federal proceedings while the Illinois courts consider the DNA testing motion. *See, e.g.*, *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005); *Newell v. Hanks*, 283 F.3d 827, 834 (7th Cir. 2002). Although a motion under § 116-3 is not a collateral review of a judgment and therefore does not toll AEDPA's statute of limitations, the principles of comity, finality, and federalism should strongly militate in favor of staying a prisoner's federal habeas petition while Illinois courts have an opportunity to consider the prisoner's § 116-3 motion, and where appropriate, subsequent collateral attack on the underlying judgment.

### III. CONCLUSION

We AFFIRM the district court's dismissal of Price's petition for a writ of habeas corpus as untimely.