# Illinois Official Reports

## Appellate Court

---

### *People v. Johnson*, 2020 IL App (1st) 162332

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HENRY JOHNSON, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>No. 1-16-2332 |
| Filed<br>Rehearing denied | January 16, 2020<br>February 13, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2012-CR-12138; the Hon. Domenica Stephenson, Judge, presiding. |
| Judgment | Affirmed and cause remanded with directions. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Ann B. McLennan, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justices Lampkin and Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1 Following a jury trial, defendant, Henry Johnson, was found guilty of armed robbery, aggravated kidnapping, and two counts of aggravated criminal sexual assault. The evidence presented at trial showed that defendant forced the victim, A.B.,[1] into his van at knife point, where he sexually assaulted her. A.B. was able to escape the van and alert a security guard at a nearby senior citizen home. At trial, the State presented other-crimes evidence showing that defendant had been involved in a similar incident two weeks later and was eventually arrested. On appeal, defendant contends that he was denied a fair trial where the court improperly allowed excessive other-crimes evidence regarding the separate sexual assault incident that occurred weeks after the incident at bar. Defendant further contends that the court denied defendant his constitutional right to present a defense where it prevented him from questioning the victim and the State's DNA expert about two unidentified male DNA profiles, which did not match defendant, found on the victim's vaginal swab. Defendant also contends that the court erred in refusing to allow defendant to inquire into the specific nature of the victim's pending disorderly conduct charge. Defendant further contends that his 46-year sentence is excessive given the mitigating factors presented. Finally, defendant contends that he is entitled to two additional days of presentence custody credit. For the reasons stated, we affirm defendant's convictions and sentence and remand the cause to the circuit court so that defendant can file a motion pursuant to Illinois Supreme Court Rule 472(e) (eff. May 17, 2019).

¶ 2                                          I. BACKGROUND
¶ 3                                          A. Pretrial Motions
¶ 4                                       1. *Other-Crimes Evidence*
¶ 5 Prior to trial, the State filed a motion to allow evidence of other crimes. In its motion, the State outlined the facts of a sexual assault it contended that defendant committed about two weeks after the events in the case at bar. The State asserted that the circumstances in that case were factually substantially similar to the incident at bar and occurred only two weeks later. The State asserted that, in the other case, defendant forced a woman, J.G., into his van at knife point, where he attempted to rape her. J.G. was able to escape from the van and eventually contacted police after receiving assistance from a witness. The events led to defendant's arrest. The State sought to admit the evidence to prove defendant's propensity, identity, and motive and to refute any claim of consent. In response, defendant contended that the other-crimes evidence should not be admitted because the evidence was more prejudicial than probative.

¶ 6 The court ruled that the incident involving J.G. was relevant in the case at bar on the issue of consent. The court also found that there was "great similarity" between the two incidents with regard to the location, vehicle, and method. The court therefore found that the other-crimes evidence could be admitted to show "identification and identity." The court further found that the evidence could be admitted to show propensity "[a]s specified in the statute which deals with these types of sexual assault cases."

---

[1]It is the practice of Illinois courts to refer to victims of sex offenses by initials so as to protect their privacy. *People v. Munoz-Salgado*, 2016 IL App (2d) 140325, ¶ 1 n.1.

¶ 7    The State subsequently filed a supplemental motion to admit other-crimes evidence seeking to admit the evidence for the additional basis of establishing the circumstances of the arrest. The State contended that the circumstances of defendant's arrest in the incident with J.G. demonstrated how the police were led to the crime defendant committed with regard to A.B. The State sought to have a witness who identified defendant's van testify.

¶ 8    At a hearing on the State's motion, the court found that the other-crimes evidence was appropriate to show the circumstances of the arrest, but it expressed concern regarding how much of the evidence it would admit. The court noted that the more evidence it admitted, the more prejudicial the evidence became. The court determined that it would need to balance how much evidence it would admit against the possibility of unfair prejudice. The court stated that it would revisit that question before trial.

¶ 9    Defendant filed a motion to reconsider the court's ruling on the State's other-crimes evidence motions, contending that the State could not prove that defendant committed a crime without the testimony of J.G., who the State did not have present as a witness. Defendant asserted that, therefore, evidence of the other crime could not be admitted. The court denied defendant's motion, but the court indicated that, prior to the presentation of the other-crimes evidence, it would give a limiting instruction to the jury instructing the jury that it should consider the other-crimes evidence only for identification and to explain the steps in the investigation.

¶ 10                                   2. *Rape Shield Motion* in Limine

¶ 11    Prior to trial, the State also filed a motion *in limine* pursuant to section 115-7 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7 (West 2012)), commonly known as the rape shield statute, seeking to prohibit defendant from eliciting evidence regarding A.B.'s prior sexual activity or reputation. Specifically, the State sought to bar evidence that the vaginal swab collected from A.B. showed two male DNA profiles, neither of which matched the DNA profile of defendant. Defendant opposed this motion, contending that the exclusion of the DNA evidence would hinder his defense. Defendant asserted that the DNA evidence would support his defense that A.B. "is possibly confusing the defendant with someone else whom she had sex with her [*sic*] at a time close in proximity to the encounter between her and the defendant." Defendant maintained that this evidence would thus support his contention that A.B. was mistaken in her identification of defendant. Defendant also contended that the prohibition of this evidence would violate defendant's constitutional right to present a defense. The court granted the State's motion *in limine*, finding that it would not inhibit defendant's ability to present a defense.

¶ 12                                        B. Trial Testimony
¶ 13                                       1. *State's Case-in-Chief*
¶ 14    At trial, A.B. testified that in May 2012 she was homeless, living in a shelter for battered women. She would also occasionally stay with friends or relatives and had a cell phone provided by the shelter. In 2008, A.B. pled guilty to a misdemeanor charge of attempted possession of an illegal prescription. She also testified that she currently had a pending case for felony disorderly conduct but confirmed that the State had not made her any promises with regard to that case. On May 28, 2012, she spent the night at a friend's house while her children were at her aunt's house. She left the friend's house around 3 a.m. on May 29 because she had

to get her children ready for school. On her way to her aunt's home, she stopped at the intersection of Kilpatrick Avenue and Madison Street to wait for a bus. While she was looking to see if the bus was coming, defendant approached her from behind with a butcher knife and instructed her to get into his van. A.B. did not see the knife but could feel something sharp being pressed into her side. Defendant told her to get into his van or he would kill her.

¶ 15 A.B. got into the front passenger seat of defendant's van, and defendant climbed over her into the driver's seat. Defendant told A.B. that he was going to rape her, rob her, and kill her. A.B. had a purse that contained her identification, cell phone, and pictures of her children. Defendant drove away with A.B. in the van and parked it on Kilpatrick Avenue and Van Buren Street. Defendant instructed A.B. to get into the backseat of the van. Defendant then climbed into the backseat with A.B. and told her to take off her shirt. When A.B. removed her shirt and bra, some money fell out. Defendant picked up the money, put it in his pocket, and then told her to put her shirt and bra back on.

¶ 16 Defendant then told A.B. to perform oral sex on him. A.B. complied, but defendant did not ejaculate. Defendant then told A.B. to lie down on her back and take off her pants so that he could have vaginal sex with her. A.B. again complied, but only took one leg out of her pants. Defendant had vaginal sex with A.B. for about a minute and then stopped, but defendant did not ejaculate. A.B. told defendant that she was pregnant and had kids, but he told her that it did not matter because she was not going to live. Defendant then told A.B. to turn around so that he could have anal sex with her.

¶ 17 A.B. testified that at that point she started to look for an "escape route" because she knew "it was almost over with." A.B. was able to open the lock on the rear driver's side door and then jumped out of the van onto her knees. A.B. left her cell phone, purse, and shoes in defendant's van. A.B. ran away from the van but was able to see part of the license plate number for the van: 38 N. A.B. also observed that defendant had an Edward Hines Jr. VA Hospital (Hines VA) identification badge and thought he was an employee. A.B. ran to a nearby senior citizen home and started running around the building and knocking on the windows and doors looking for help. A security guard at the senior citizen home called the police for A.B. Then, A.B. called the friend she had stayed with the night before. A.B. first went to see her children, and then she went to the hospital later that evening. At the hospital, the staff performed tests on her and took evidence from her, including conducting a vaginal swab.

¶ 18 Twelve days later, on June 10, 2012, A.B. went to the police station to view a lineup. A.B. identified defendant in the lineup as the man who raped her. The State then published security camera footage from the senior citizen home to the jury. The footage depicted A.B. approaching the senior citizen home and seeking help by knocking on the doors and windows of the building. The video also showed A.B. speaking with the security guard at the building and the police.

¶ 19 On cross-examination, A.B. testified that, after the incident, she returned to her friend's house to retrieve some shoes because she had left her shoes in defendant's van. She then went to her aunt's house to see her children. At the hospital, the doctors swabbed her mouth and her vagina, and they also looked for DNA under her fingernails. The doctors did not treat her for any trauma but did give her medication in case she had an infection. On June 10, 2012, A.B. learned that the police were looking for her because they believed they had found the person who had sexually assaulted her. A.B. eventually spoke with a detective at the police station.

A.B. denied approaching defendant's van before defendant accosted her, denied working as a prostitute, and denied entering the van willingly. A.B. also denied negotiating pricing for sexual acts with defendant, denied using crack cocaine, and denied directing defendant where to drive the van after she was inside it.

¶ 20   Robert Ward testified that he was a security guard at the Eloise McCoy senior citizen home on West Van Buren Street in Chicago, Illinois. Ward testified that during his shift on May 29, 2012, at around 5 a.m., a "young lady [came] running through the doors hollering." Ward testified that A.B. was "hysterical" and was crying. A.B. told Ward that she had been raped. Ward called the police and allowed A.B. to use his cell phone to make a phone call. Outside the building, A.B. showed Ward where the vehicle she escaped from had been parked, and Ward waited with A.B. until the police arrived. On cross-examination, Ward testified that he took a cigarette break from around 4:45 a.m. to 4:50 a.m., less than 10 minutes before A.B. approached the building. While he was outside smoking the cigarette, Ward did not hear any screaming and did not recall seeing a van.

¶ 21   Erik Ozolins testified that he was a nurse in the emergency room at Loretto Hospital. He testified that he examined A.B. in the emergency room on the night of the incident. He described her as "anxious, tearful, scared." A.B. told Ozolins that, at around 5 a.m. that morning, she was pulled into a van by a male wearing an employee badge for the Hines VA and raped at knife point. A.B. told Ozolins that the male raped her orally and vaginally and attempted to rape her anally. A.B. complained of scalp, back, and abdominal pain. A.B. indicated that she wanted to speak with a crisis worker at the hospital. Ozolins noted that A.B. was "very tearful, very upset." On cross-examination, Ozolins testified that A.B. told him she was raped for over 30 minutes and that she was forced to snort cocaine. She also told Ozolins that she was five months pregnant. Another nurse at Loretto Hospital testified that she collected a sexual assault evidence collection kit from A.B. that included oral, vaginal, and anal swabs and a collection from beneath A.B.'s fingernails.

¶ 22   Forensic science experts from the Illinois State Police testified that they tested the sexual assault evidence collection kit collected by the hospital staff on the night of the incident and compared the results with the DNA collected from defendant's buccal swab. The forensic scientists did not find defendant's DNA on A.B.'s vaginal swab but did find a DNA profile that was consistent with defendant's DNA profile in A.B.'s fingernail scrapings.

¶ 23                                    2. *Other-Crimes Evidence*

¶ 24   The State also introduced testimony from two witnesses in support of its pretrial other-crimes evidence motion. Prior to that testimony, the court instructed the jury that it should consider the testimony on the issues of defendant's identification and to explain the circumstances of defendant's arrest. The court instructed the jury that it was for them to determine whether defendant was involved in the conduct and, if so, "what weight should be given to this evidence on the issues of identification and to explain the circumstances of arrest."[2]

_____

[2] Although the court initially admitted the other-crimes evidence on the issues of consent, propensity, identification, and the circumstances of the arrest, it appears from the record that, by the start of trial, the evidence was admitted only on the issues of identification and circumstances of the arrest.

¶ 25    Jerry Atwater testified that at around midnight on June 10, 2012, he was on Kilpatrick Avenue and Madison Street on the west side of Chicago at a car show. The police arrived to break up the car show around 2 a.m., and Atwater began driving his vehicle south down Kilpatrick Avenue. Atwater turned left onto Van Buren Street, passing the Eloise McCoy senior citizen home. As he was waiting for the vehicle in front of him to move, Atwater heard very loud screaming and yelling. He then saw a "young lady" appear from the driver's side of a van that was sitting nearby. The woman was screaming, and Atwater observed that her skirt or dress had been pulled up. Atwater later learned the woman's name was J.G. Atwater told J.G. to get into the backseat of his truck. After J.G. got into his vehicle, Atwater called police. The van started to drive away, and Atwater followed it while he was on the phone with the 911 operator. While he was following the van, Atwater observed that it had a temporary license plate number of 382N698. Atwater followed the van for about 10 minutes until the 911 operator told him to stop following it. After Atwater stopped following the van, he observed a police vehicle and flagged it down. Atwater told the officers about the situation, and the officers also spoke to J.G. J.G. got into the police vehicle with the officers, and Atwater left the scene. Atwater could not identify the driver of the van but described the driver as a bald male. On cross-examination, Atwater testified that there is a lot of crime, a lot of drug sales, and prostitution in the area where he encountered J.G.

¶ 26    Chicago police officer Pablo Aguirre testified that at 2:30 a.m. on the morning of June 10, 2012, he was on patrol in the area of Chicago Avenue and Pulaski Road when he received an assignment to find J.G. Aguirre testified that he spoke with J.G. after being waved down by Atwater. J.G. gave Officer Aguirre a description of a black male and a vehicle. The vehicle was a green van with a temporary license plate 382N698. After about 40 minutes of searching the area, Officer Aguirre located the van in front of a residence on West Adams Street. Defendant was in the driver's seat of the van and matched the description given by J.G. Defendant was brought to the police station for processing. Among his possessions were two cell phones, $97 in cash, a wallet, and an Illinois driver's license belonging to A.B. Officer Aguirre learned that A.B. had reported a criminal sexual assault 12 days earlier. Evidence technicians recovered paint scrapers, a retractable box cutter, three putty knives, and A.B.'s cell phone from defendant's van.

¶ 27                              3. *Defendant's Testimony*

¶ 28    Defendant testified that on May 28, 2012, he was employed as a janitor at the Loyola Medical Center (Loyola). Loyola issued him certain tools for his job, including putty knives, pliers, and "scrapers." He kept these tools in his van. He testified that he left work around 2:30 a.m. on the morning of May 29, 2012, and then he "did something stupid." He drove to a "particular area" where "the prostitutes be at [*sic*]." Defendant drove to the corner of Monroe Street and Kenton Avenue, where he was approached by A.B. A.B. walked up to the driver's side door of defendant's vehicle and asked him if he was dating, which defendant testified meant that she was asking him if he wanted to "buy some sex." Defendant told her that he was dating.

¶ 29    A.B. walked around to the passenger side of his van and voluntarily entered the vehicle. A.B. then told defendant the pricing for various sexual acts. Defendant drove away, and the two negotiated $30 for "straight sex," despite A.B. initially telling him that "straight sex" would cost $40. A.B. directed defendant where to drive, and he ended up on Van Buren Street.

When defendant stopped the vehicle, A.B. pulled out a bag of crack cocaine. A.B. asked defendant if she could smoke the crack cocaine, but defendant asked her to wait until they finished "taking care of business." A.B. then put the crack cocaine and her identification in a small compartment on the van's dashboard. A.B. then climbed into the backseat of the van, and defendant locked the doors of the van.

¶ 30 A.B. told defendant she was ready, and defendant joined her in the backseat. Defendant started to remove his belt, but A.B. stuck out her hand and said "money first." Defendant handed her the money, and A.B. counted it, then stuck it in her bra. Defendant then asked A.B. for a condom, but A.B. told him she did not have one. Defendant got back into the driver's seat of the van and told A.B. that he was going to buy a condom at a nearby gas station. A.B. told defendant that there was no need for him to do that because she was "clean." Defendant told her that it would only take a minute, but A.B. told him she did not have time and needed to get back to her spot. Defendant told her to "forget it" and asked for his money back. A.B. told him that she would not give him his money back, and defendant returned to confront her in the back seat. A.B. unlocked the driver's side rear door and left the van. Defendant got back into the driver's seat and drove away.

¶ 31 After he drove away, defendant realized A.B. had left her purse in his van. Defendant threw her purse out of his window. After defendant arrived home, he discovered that A.B. had also left her identification and the crack cocaine in his van. Defendant threw the crack cocaine out of his vehicle and put A.B.'s identification in his back pocket. Defendant also found A.B.'s cell phone in his van. He decided to keep the phone because A.B. did not refund him his $30. Defendant testified that on the night he was arrested he still had A.B.'s cell phone because he was using it in an attempt to get some of his money back. He also still had A.B.'s identification in his wallet because he did not want his wife to find it and he forgot to throw it away. Defendant denied having a butcher's knife that night, kidnapping A.B., threatening her, or raping her. Defendant further denied having even consensual sex with A.B.

¶ 32 On cross-examination, defendant testified that after he was arrested he did not tell the detectives the whole story about his encounter with A.B. because he was embarrassed. When the detectives asked him why he had A.B.'s identification, he told the detectives that a woman left it in his van after he gave her a ride. Similarly, when the detectives asked him about the cell phone that A.B. left in the van, defendant told the detectives that a friend gave it to him.

¶ 33 4. *Jury Verdict and Sentencing*

¶ 34 Following closing argument, the jury found defendant guilty of armed robbery, aggravated kidnapping, and two counts of aggravated criminal sexual assault. At defendant's subsequent sentencing hearing, the State argued in aggravation that the court should also consider the incident with J.G. in determining the sentence. The State noted that the minimum sentence was 38 years and asked for a sentence closer to the maximum rather than the minimum. In mitigation, defense counsel presented letters from family and friends on defendant's behalf and also noted defendant's lack of criminal history, his educational background, and his work history. Defendant spoke in allocution, professing his innocence and asking the court for leniency. The court stated that it considered all of the factors in aggravation and mitigation, and defendant's statements in allocution, in determining a sentence of 46 years. The court denied defendant's motion to reconsider his sentence, noting that it took all of the statutory factors into account and that the 46-year sentence was close to the minimum of 38 years.

Defendant now appeals.

¶ 35                                      II. ANALYSIS

¶ 36        On appeal, defendant contends that the court erred in allowing excessive other-crimes evidence where the crime at issue occurred after the incident at bar, the witnesses gave excessive detail unnecessary for purposes of proving identity or showing the circumstances of the arrest, and J.G. was unavailable to testify. Defendant also contends that the court denied him his right to present a defense where the court precluded him from questioning A.B. and the State's DNA experts regarding two unidentified male DNA profiles that did not match defendant that were present on A.B.'s vaginal swab. Defendant further asserts that the court erred in precluding him from inquiring into the specific nature of A.B.'s pending charge for disorderly conduct where that charge involved A.B. filing a false police report and was evidence of her motive to testify falsely. Defendant also contends that his 46-year sentence is excessive in light of the mitigating circumstances presented. Finally, defendant asserts that the court incorrectly calculated the number of days he spent in presentence custody and that he is entitled to two additional days of presentence custody credit.

¶ 37                               A. Other-Crimes Evidence

¶ 38        We first address defendant's claims with regard to the State's other-crimes evidence. Prior to trial, the State filed two motions outlining other-crimes evidence it intended to present at trial. The other crime occurred two weeks after the incident with A.B. and involved similar factual circumstances. The State sought to introduce the evidence to prove defendant's identity and the circumstances of the arrest. Defendant contends that the court erred in admitting this evidence because the incident with J.G. occurred after the incident with A.B. Defendant further contends that identity was not an issue at trial because defendant did not deny that he was in the van with A.B. Defendant also asserts that the evidence was not admissible because J.G. was unavailable to testify and thus the State could not prove that a crime occurred. Defendant further contends that the evidence presented went far beyond what was necessary to show the circumstances of the arrest, where Atwater testified that J.G. said she had been raped and Officer Aguirre referred to J.G. as a "victim." Defendant maintains that these errors were not harmless and that the court erred in admitting the other-crimes evidence.

¶ 39                                   1. *Section 115-7.3*

¶ 40        Section 115-7.3 of the Code permits the introduction of certain evidence in cases where defendant is charged with, *inter alia*, aggravated criminal sexual assault. 725 ILCS 5/115-7.3(a)(1) (West 2012). In determining whether such evidence is admissible, the court should weigh the probative value of the evidence against the undue prejudice that could result from the introduction of the evidence in consideration of the proximity in time to the charged offense, the degree of factual similarity between the charged offense, and any other relevant facts and circumstances. *Id.* § 115-7.3(c). Evidence of other crimes is admissible if it is relevant for any purpose other than to show the defendant's propensity to commit crimes. *People v. Wilson*, 214 Ill. 2d 127, 135 (2005). Other-crimes evidence may be admitted to show *modus operandi*, intent, motive, identity, or the absence of mistake. *People v. Pikes*, 2013 IL 115171, ¶ 11; see also Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). Even other-acts evidence that is relevant for a proper purpose will be excluded if its probative value is substantially outweighed

by the danger of unfair prejudice. *Pikes*, 2013 IL 115171, ¶ 11. We will not reverse the decision of a trial court to admit evidence of other crimes absent an abuse of discretion. *People v. Donoho*, 204 Ill. 2d 159, 182 (2003). An abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable or when no reasonable person would take the position adopted by the trial court. *Id.*

¶ 41                                          2. *Identity*

¶ 42    Here, the State offered other-crimes evidence through the testimony of Atwater and Officer Aguirre. Prior to trial, the State filed two motions with regard to the other-crimes evidence it intended to offer. First, it sought to introduce the evidence for the purpose of proving defendant's identity and to show lack of consent. Later, the State filed a supplemental motion to also use the evidence to prove the circumstances of defendant's arrest. The court granted both of the State's motions with regard to the other-crimes evidence and denied defendant's motion to reconsider those rulings, stating that it would give a limiting instruction to the jury. As the trial court noted, the incident with J.G. was factually similar to the incident at issue in this case, and the incidents occurred within 12 days of each other; thus the proximity factor of the statute was clearly satisfied.

¶ 43    Defendant contends, however, that the court erred in admitting the evidence on the issue of identity where identity was not an issue at trial and because the incident with J.G. occurred after the incident in this case. Defendant maintains that he never contested the fact that he was in the van with A.B. but instead challenged her assertion that he sexually assaulted her. He also asserts that evidence of other crimes committed after the charged offense is irrelevant to prove the identity of the perpetrator of the charged offense.

¶ 44    We agree with defendant that identity was not at issue in this case. Identity is at issue whenever defendant denies he was the offender. *People v. Boyd*, 366 Ill. App. 3d 84, 92 (2006). Here, defendant did not assert that he was not the offender but argued that the interaction between him and A.B. was consensual in that A.B. was a prostitute who willingly entered his vehicle and he did not engage in any sexual intercourse with her, consensual or otherwise.[3] Thus, identity was not at issue here. See *id.* ("Here, where the defense theory was consent, the identity of the offender was not at issue."); see also *People v. Dupree*, 339 Ill. App. 3d 512, 520 (2003) (identity was not an issue where defendant "did not deny he took the victim's money," he "only claimed that he did not take the money under a deception as charged by the State").

¶ 45    We observe, however, that defendant did initially raise an issue of identity in his pretrial motions. Defendant asserted in his motion in opposition to the State's motion *in limine* to exclude evidence under section 115-7 of the Code (725 ILCS 5/115-7 (West 2012)) that A.B. "is possibly confusing the defendant with someone else whom she had sex with her [*sic*] at a time close in proximity to the encounter between her and the defendant." Defendant acknowledges this argument in his reply brief but asserts that he dropped his contentions with regard to identity prior to trial.

---

[3]Although defendant did not raise the issue of consent in any of his pretrial pleadings, including his answer to discovery, defense counsel did argue in his opening statement that the interaction between defendant and A.B. was consensual.

¶ 46 Despite defendant's assertions, however, the record shows that defendant never challenged the admission of the other evidence to prove identity in the trial court. Indeed, as noted, in his pretrial motion, defendant explicitly contended that he was challenging A.B.'s identification. In contesting the State's motions, defendant contended that there was "no showing that the evidence being presented will contain any fact that would either strengthen or weaken the complaining witness's identification." Indeed, even after the court ruled that the other-crimes evidence would be admitted for the purpose of proving defendant's identity, defense counsel stated, in arguing on the motion to preclude evidence under section 115-7, that "[i]n this case *** there might be an issue of identification." Defense counsel continued in response to the court's questioning that "[t]here is going to be an issue of identification because there is evidence that this witness was under the influence of crack cocaine." Indeed, at no point in the record does defendant contend that the proposed other-crimes evidence should be excluded because there is no issue of identification, as defendant contends before this court. Instead, as outlined, defendant repeatedly indicated that defendant's identity was going to be an issue at trial. The fact that defendant evidently elected not to pursue this defense at trial does not retroactively render the trial court's ruling erroneous where defendant never brought the claimed error to the trial court's attention. Indeed, even in defendant's lengthy posttrial motions for a judgment notwithstanding the verdict and for a new trial, defendant broadly contended that the court erred in granting the State's motions to admit evidence of other crimes but did not contend that the court erred in admitting the evidence on the issue of identity because identity was not an issue at trial.

¶ 47 As such, we find that defendant invited this error. Under the doctrine of invited error, defendant may not proceed in one manner in the trial court and then later contend on appeal that the course of action was in error. *People v. Carter*, 208 Ill. 2d 309, 319 (2003) (citing *People v. Villarreal*, 198 Ill. 2d 209, 227-28 (2001)). That is precisely what defendant did in this case where defendant indicated before trial that identification was going to be an issue, opposed the State's motions on that basis, and then, after the court ruled on the motions, evidently dropped that potential defense and never brought the change to the attention of the trial court so that it could correct the error. Accordingly, we find that defendant may not now object to that ruling on appeal.[4] See *id.* (citing *Villarreal*, 198 Ill. 2d at 227-28).

¶ 48 However, defendant did contend before the trial court, as he does on appeal, that the other-crimes evidence was not relevant to prove identity because the incident with J.G. occurred after the incident with A.B. Defendant asserts that evidence of other crimes committed after the charged offense is irrelevant to prove the identity of the perpetrator of the charged offense. Despite defendant's protestations, however, there is no requirement that the other incident being offered in the other-crimes evidence occur prior to the charged offense. See *People v. Wilson*, 2015 IL App (4th) 130512, ¶ 79. Rather, the statute focuses on the incidents' "proximity in time." 725 ILCS 5/115-7.3(c)(1) (West 2012). As this court has recognized, "there is no language within section 115-7.3 or surrounding sections that indicate the term 'proximity in time' is intended to apply to only past offenses." *Wilson*, 2015 IL App

---

[4]Although defendant's failure to preserve this error by objecting in the trial court may give rise to plain error review, an argument that defendant does not make in his briefs before this court, we observe that "[p]lain error review is forfeited, *** when the defendant invites the error." (Internal quotation marks omitted.) *People v. Cox*, 2017 IL App (1st) 151536, ¶ 87.

- 10 -

(4th) 130512, ¶ 79; see also *People v. Spyres*, 359 Ill. App. 3d 1108, 1112 (2005) ("The term 'other-crimes evidence' encompasses misconduct or criminal acts that occurred either before or after the allegedly criminal conduct for which the defendant is standing trial."). Indeed, in response to the trial court's questioning of defense counsel at a hearing on the State's other-crimes motions, defense counsel acknowledged that there is case law that indicates that it is appropriate for other-crimes evidence to include acts that occurred after the date of the charged offense.

¶ 49    We further find defendant's reliance on *People v. Rosado*, 2017 IL App (1st) 143741, unpersuasive. Defendant relies on this case for the broad proposition that "evidence of other crimes committed after the charged offense is categorically irrelevant to prove the identity of the perpetrator of the charged offense." In *Rosado*, this court found that evidence of an incident that occurred after the charged offense was not relevant to prove the defendant's identity where the witnesses did not explain how their ability to recognize the defendant (and distinguish him from his similar-looking brother) six days earlier was bolstered by seeing the defendant at the later incident. *Id.* ¶¶ 25-26. Here, there is no argument that A.B.'s identification of defendant was bolstered by the later incident with J.G., and thus, the reasoning in *Rosado* is not relevant to the case at bar. At any rate, the holding in *Rosado* certainly does not suggest that evidence of other crimes that occurred after the charged offense is "categorically irrelevant" to prove identity, as defendant suggests. The court merely held that, under the circumstances in that case, the evidence was not relevant to bolster the identification of that witness. As discussed, this court has found that evidence of other crimes committed after the charged offense are admissible on the issue of identity. *Wilson*, 2015 IL App (4th) 130512, ¶ 80; *Spyres*, 359 Ill. App. 3d at 1112. The *Rosado* court also found that the proffered other-crimes evidence should not be admitted because it had no other relevance. *Rosado*, 2017 IL App (1st) 143741, ¶ 26. As discussed below, however, the other-crimes evidence offered by the State in this case was also relevant to show the circumstances of the arrest.

¶ 50                            3. *Proof of Other Crime*

¶ 51    Defendant next contends that the court erred in admitting the other-crimes evidence because J.G. was not available to testify at trial and thus the State could not prove that a crime occurred. Defendant contends that, when the State seeks to introduce evidence of other crimes, it must first show that a crime took place and that defendant committed it. He maintains that, without testimony from J.G., there was no way for the jury to determine whether a crime occurred and the State instead relied on "innuendo testimony" about the incident.

¶ 52    We first observe that our supreme court has held that the State does not need to prove defendant's involvement in other crimes beyond a reasonable doubt but instead such proof must be "more than a mere suspicion." *People v. Thingvold*, 145 Ill. 2d 441, 456 (1991). Here, Atwater testified that, at around 2 a.m., he saw J.G. appear, screaming from defendant's van with her skirt or dress pulled up. Atwater followed the van with J.G. in his vehicle until police arrived. Officer Aguirre testified that he received a description of a vehicle with a license plate number and a description of a suspect and arrested defendant in his van based on that information. In the van, police found A.B.'s belongings, and the van's license plate number was consistent with the partial license plate A.B. testified she saw. This raised more than a mere suspicion that defendant committed the other crime. It was unnecessary for the State to present additional evidence, and, indeed, limiting the evidence regarding the incident with J.G.

- 11 -

was necessary because, even though the evidence was relevant, other-crimes evidence "must not become the focal point of the trial." *People v. Hale*, 2012 IL App (1st) 103537, ¶ 24. "The trial court should prevent a mini-trial of a collateral offense." (Internal quotation marks omitted.) *Id.* (citing *People v. Boand*, 362 Ill. App. 3d 106, 125 (2005)). Here, the State presented sufficient evidence to raise more than a mere suspicion that defendant committed a crime, and the court correctly exercised its discretion to limit the evidence introduced so that the incident with J.G. did not become the focal point of the trial.

¶ 53                                    4. *Confrontation Clause*

¶ 54        We next address defendant's contentions that his constitutional right to confront the witnesses against him was violated, where J.G. did not testify. Defendant points out that, during Atwater's testimony, he testified that J.G. told him that she had been "raped." Defendant contends that the confrontation clause bars this testimonial statement, where the witness was unavailable to testify and defendant did not have a prior opportunity to cross-examine her.

¶ 55        While cross-examining Atwater regarding his involvement in the incident with J.G., defense counsel asked Atwater a series of questions regarding what he told detectives in regard to J.G.'s appearance. Atwater responded that he knew "for certain that I told—that I said that the woman was screaming and that she had been raped." Following this testimony, defense counsel objected, and the court ruled, "Sustained. Stricken. Disregard." Following Atwater's testimony, defense counsel made a motion for a mistrial based on Atwater's testimony that J.G. said she had been raped. The court denied the motion, noting that it immediately struck the testimony and ordered the jury to disregard it. The court found that, even though it did not admit the testimony, it could have admitted it as an "excited utterance." The court found that there was thus no error and that any alleged error was harmless because the jury was instructed to disregard the testimony and the jury is presumed to follow the court's instructions.

¶ 56        We find that there is no confrontation clause issue where the court struck the testimony and ordered the jury to disregard it. The confrontation clause of the sixth amendment requires that, "[i]n all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him." U.S. Const., amends. VI, XIV; see also Ill. Const. 1970, art. I, § 8; *People v. Tracewski*, 399 Ill. App. 3d 1160, 1165 (2010). Because Atwater's testimony regarding what J.G. told him was struck, there are no out-of-court statements from J.G. present in the record, and J.G. did not otherwise testify. Thus, she was not a witness against defendant. Further, as defendant correctly notes, the confrontation clause applies only to testimonial evidence. *People v. Barner*, 2015 IL 116949, ¶ 41 (citing *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004)). The United States Supreme Court distinguished between testimonial and nontestimonial statements in *Davis v. Washington*, 547 U.S. 813 (2006). There, the Court explained:

> "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.* at 822.

Thus, Atwater's statement to detectives that J.G. told him that she was raped could fairly be considered nontestimonial where J.G. made the statement to Atwater, which Atwater then

relayed to detectives for the primary purpose of assisting the police in an ongoing emergency and would not be subject to confrontation clause concerns. Accordingly, there can be no confrontation clause issue where the testimony was never admitted, the statement was nontestimonial, and J.G. did not otherwise not testify.

¶ 57                                    5. *Excessiveness*

¶ 58        Finally, defendant contends that the other-crimes evidence admitted went well beyond what was necessary to show identity or steps in the investigation. Defendant points out that during Atwater's testimony, he stated that J.G. said she had been "raped" and Officer Aguirre referred to J.G. as a "victim" during his testimony. Defendant asserts that this testimony was not relevant to show the circumstances of the arrest or identity and was highly prejudicial.

¶ 59        The record shows that, throughout trial, the court was concerned with limiting the other-crimes testimony so as to not introduce evidence that was prejudicial to defendant. After granting the State's motion to allow evidence of other crimes, the court stated that "[t]he question then becomes how much evidence am I going—of this other incident am I going to allow in." The court noted that, although the evidence was probative, it was concerned about its prejudicial nature. The court noted that it would have to strike a balance to determine how much of the evidence to admit. Prior to the introduction of the other-crimes evidence at trial, the court admonished the jury that it should consider the testimony only on the issues of defendant's identification and to explain the circumstances of defendant's arrest. The record thus shows that the trial court properly limited evidence of other crimes "to that evidence which is relevant to the purpose for which the other crime is admitted." (Internal quotation marks omitted.) *Boyd*, 366 Ill. App. 3d at 90.

¶ 60        Defendant maintains, however, that the only relevant testimony was that defendant was arrested on an unrelated matter and police recovered A.B.'s identification and cell phone from his van. Defendant asserts that it was unnecessary for the State to elicit testimony regarding the incident with J.G. and it was also unnecessary for the State to show Atwater and A.B. a picture of J.G. "Although the State possibly could have proved its case without this evidence, there is no rule that requires the State to present a watered-down version of events simply because otherwise highly probative evidence is unflattering to defendant." *People v. Rutledge*, 409 Ill. App. 3d 22, 26 (2011). Here, it was necessary for the State to elicit testimony regarding the incident with J.G. to show the circumstances of defendant's arrest, and this is an appropriate use of other-crimes evidence. See *People v. Jones*, 105 Ill. 2d 342, 358-59 (1985); see also *People v. McKibbins*, 96 Ill. 2d 176, 183 (1983) ("It would be difficult to explain or describe circumstances surrounding the defendant's arrest without introducing a substantial amount of the evidence concerning the jewelry robbery.").

¶ 61        Moreover, the degree of similarity between the charged offense and the other-crimes evidence is one of the key factors for the court to consider in determining whether to admit the other-crimes evidence. 725 ILCS 5/115-7.3(c)(2) (West 2012); *Donoho*, 204 Ill. 2d at 184 ("As factual similarities increase, so does the relevance, or probative value, of the other-crimes evidence."). It was thus necessary for the State to elicit testimony demonstrating the similarities between the two incidents, which it properly did through Atwater's and Officer Aguirre's testimony. Although defendant once again takes issue with Atwater's testimony that J.G. told him she was raped, as noted, the court immediately struck that testimony and instructed the jury to disregard it. As the trial court noted, we presume the jury follows the trial court's

- 13 -

instructions. *People v. Mims*, 403 Ill. App. 3d 884, 897 (2010) (citing *People v. Taylor*, 166 Ill. 2d 414, 438 (1995)). Similarly, the court sustained defendant's objection after Officer Aguirre referred to J.G. as "the victim." Defendant has thus failed to show that he was prejudiced by this "excessive" evidence.

¶ 62 For the same reasons, we find that it was not prejudicial for the State to show both A.B. and Atwater a photograph of J.G. A.B. testified that she did not recognize J.G., and Atwater identified J.G. as the woman he saw exit defendant's van. Even assuming the court erroneously admitted some of the other-crimes evidence to the point where it became "excessive" as defendant suggests, reversal is not warranted if it is unlikely the error influenced the jury. *People v. Hall*, 194 Ill. 2d 305, 339 (2000). As noted, the trial court carefully limited the amount of other-crimes evidence the State was permitted to present and instructed the jury regarding the purpose of the other-crimes evidence. Based on the evidence presented by the State from A.B., Ward, medical professionals, and police personnel, we cannot say that it is likely that any claimed error in the court's admission of the other-crimes evidence influenced the jury. Accordingly, we find that the court did not err in admitting the other-crimes evidence, and to the extent that it did err, we find that defendant invited such error and that such error was, nonetheless, not prejudicial.

¶ 63 B. Unidentified Male DNA Profiles

¶ 64 We next address defendant's contention that the court denied him his constitutional right to present a defense, where the court precluded him from questioning A.B. and the State's DNA experts regarding the two unidentified male DNA profiles that were found on A.B.'s vaginal swab. Defendant asserts that, even though the rape shield statute generally bars evidence of a sexual assault victim's past sexual conduct, such evidence was constitutionally required in this case where the exclusion of the evidence prevented defendant from adequately presenting his theory of the case. Defendant sought to establish that A.B. was a prostitute who approached defendant in his van, and defendant asserts that the two male DNA profiles were a critical aspect of his defense.

¶ 65 1. *Rape Shield*

¶ 66 Section 115-7 of the Code, the Illinois rape shield statute, provides that in prosecutions for, *inter alia*, aggravated criminal sexual assault and criminal sexual assault

> "the prior sexual activity or the reputation of the alleged victim or corroborating witness *** is inadmissible except (1) as evidence concerning the past sexual conduct of the alleged victim or corroborating witness under Section 115-7.3 of this Code with the accused when this evidence is offered by the accused upon the issue of whether the alleged victim or corroborating witness under Section 115-7.3 of this Code consented to the sexual conduct with respect to which the offense is alleged; or (2) when constitutionally required to be admitted." 725 ILCS 5/115-7(a) (West 2012).

Thus, under an exception written into section 115-7, prior sexual activity of the alleged victim is admissible if the admission of such evidence is " 'constitutionally required.' " *People v. Maxwell*, 2011 IL App (4th) 100434, ¶ 74 (quoting 725 ILCS 5/115-7(a) (West 2010)). The due process clause of the fourteenth amendment (U.S. Const., amend. XIV) and the confrontation clauses of the federal and state constitutions (U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8) guarantee criminal defendants "a meaningful opportunity to present a

- 14 -

complete defense." (Internal quotation marks omitted.) *People v. Santos*, 211 Ill. 2d 395, 412 (2004) (McMorrow, C.J., dissenting). Here, defendant contends that the court's exclusion of the evidence that two male DNA profiles that did not match defendant were found on A.B.'s vaginal swab violated his constitutional right to present a defense.

¶ 67                                          2. *The State's Motion* in Limine

¶ 68        In its motion pursuant to section 115-7, the State sought to exclude evidence that the DNA evidence collected from A.B.'s vaginal swab contained "[a] major human male DNA profile *** that [did] not match the defendant and a minor human DNA profile *** from which the defendant and the victim can be excluded." The State asserted that this evidence was not relevant to the issue of whether defendant committed the offense of criminal sexual assault and would only serve to show that A.B. was sexually active at the time of the offense.

¶ 69        In response, defendant contended that he sought to introduce the evidence of the two male DNA profiles to attack the reliability of A.B.'s identification of defendant. Defendant asserted that section 115-7 excludes evidence of a victim's prior sexual activity, but defendant asserted that the evidence he sought to admit was of A.B.'s "contemporaneous" sexual activity, which defendant asserted was not excluded by the statute. Defendant also contended that the justification for section 115-7 no longer existed because the State did not have a legitimate interest that outweighed defendant's interest in presenting a complete defense.

¶ 70        In granting the State's motion, the court noted that defendant was not raising a particular defense but merely suggested that A.B. may have misidentified defendant. The court stated that the DNA evidence would not be relevant unless defendant was arguing that there were other potential offenders in the van with defendant and A.B. The court therefore barred any testimony regarding the other DNA evidence that was found on A.B.'s vaginal swab. We review evidentiary rulings made pursuant to section 115-7 for an abuse of discretion. *Id.* at 401.

¶ 71                           3. *Evidence of A.B.'s Sexual History*
                         *Would Not Make a Meaningful Contribution*
                                *to the Fact-Finding Enterprise*

¶ 72        As noted with regard to defendant's contention that the court erred in admitting other-crimes evidence on the issue of identification where identification was not an issue at trial, defendant's arguments before this court are contradictory to his arguments before the circuit court. In opposing the State's motion pursuant to section 115-7, the thrust of defendant's contentions before the trial court centered on the defense that A.B. misidentified the defendant. Before this court, however, defendant contends that he should have been permitted to introduce the DNA evidence because it would have supported his theory that A.B. was a prostitute who willingly entered his van but that defendant did not have sexual intercourse with her. In the trial court, defendant broadly contended that the application of section 115-7 would violate his right to adequately present a defense, which is essentially the same as his arguments before this court despite the fact that the specific defense defendant sought to pursue was different. Moreover, defendant raised a similar argument in his posttrial motions. Accordingly, we find no issues of forfeiture, waiver, or invited error.

¶ 73     Nonetheless, we find defendant's arguments unpersuasive. "The policy underlying the rape shield statute is to prevent the defendant from harassing and humiliating the complaining witness with evidence of either her reputation for chastity or unchastity, or specific acts of sexual conduct with persons other than defendant, since such evidence has no bearing on whether she consented to sexual relations with the defendant." *People v. Lewis*, 2017 IL App (1st) 150070, ¶ 20 (citing *Santos*, 211 Ill. 2d at 414 (McMorrow, C.J., dissenting)). The "when constitutionally required" exception that defendant relies on here "requires that a defendant be permitted to offer certain evidence which [is] *directly* relevant to matters at issue in the case, notwithstanding that it concern[s] the victim's prior sexual activity." (Emphasis in original and internal quotation marks omitted.) *People v. Johnson*, 2014 IL App (2d) 121004, ¶ 42. Thus, "the determination of whether the details of the sexual activity were admissible remain[s] subject to standards of relevancy." *People v. Schuldt*, 217 Ill. App. 3d 534, 541 (1991). A victim's sexual history " 'is not constitutionally required to be admitted unless it would make a meaningful contribution to the fact-finding enterprise.' " (Internal quotation marks omitted.) *Johnson*, 2014 IL App (2d) 121004, ¶ 42 (quoting *Maxwell*, 2011 IL App (4th) 100434 ¶ 76).

¶ 74     We find this court's decision in *People v. Bates*, 2018 IL App (4th) 160255, *aff'd as modified*, 2019 IL 124143, instructive. In that case, as here, the State filed a pretrial motion *in limine* pursuant to section 115-7 to exclude evidence of the victim's past sexual conduct. *Id.* ¶ 13. In response, the defendant argued that the court should not exclude the evidence that there was semen from an unidentified male found on the victim's vaginal swab. *Id.* ¶ 14. The court granted the State's motion, finding that the "evidence is coming in solely to show prior sexual history and that is clearly *** prohibited by the Rape Shield Statute." (Internal quotation marks omitted.) *Id.* ¶ 15. On appeal, defendant contended that the court's ruling violated his constitutional rights to confront the victim and the State's DNA expert witness. *Id.* ¶ 55. This court rejected that argument, finding that the unidentified semen found on the victim's vaginal swab was not constitutionally required to be admitted. *Id.* ¶ 63. The court observed that the evidence would not make a meaningful contribution to the fact-finding enterprise and, at best, would be marginally relevant. *Id.* ¶¶ 63-64 (citing *Maxwell*, 2011 IL App (4th) 100434, ¶ 76, and *Johnson*, 2014 IL App (2d) 121004, ¶ 42). The court further found that the evidence would "pose an undue risk of harassment, prejudice, and confusing of the issues." *Id.* ¶ 64. The court concluded that, "assuming the unidentified semen was from a consensual partner, such evidence would have 'no bearing on whether [the victim] consented to sexual relations with the defendant.' " *Id.* (quoting *People v. Summers*, 353 Ill. App. 3d 367, 373 (2004)).

¶ 75     The court further found that the trial court's ruling did not prevent defendant from presenting his theory of the case. *Id.* ¶ 65. The court noted that defendant was permitted to cross-examine the State's witnesses and elicit testimony supporting his theory. *Id.* The court concluded:

> "Further, this is not a case where a defendant contends that he had consensual sex with a victim but argues that another unknown individual subsequently raped the victim. Instead, defendant's theory was that he had never had sex with [the victim]. If the jury would have believed this argument, defendant would not have been found guilty of criminal sexual assault. Accordingly, under the facts of this case, the trial court did not abuse its discretion in denying the introduction of this evidence." *Id.*

¶ 76     As in *Bates*, we find that the trial court here did not err in granting the State's motion and excluding this evidence where the evidence would have been, at best, only marginally relevant

- 16 -

and would not have made a meaningful contribution to the fact-finding enterprise. Assuming the two unidentified male DNA profiles present on A.B.'s vaginal swab were from consensual partners, such evidence would have " 'no bearing on whether [A.B.] consented to sexual relations with the defendant.' " *Id.* ¶ 64 (quoting *Summers*, 353 Ill. App. 3d at 373). As such, the evidence was not relevant. See *Schuldt*, 217 Ill. App. 3d at 541. Moreover, defendant was presented with a meaningful opportunity to confront the State's witnesses through cross-examination and was also able to present his defense through his own testimony. In fact, on cross-examination, defense counsel asked A.B. if she was a prostitute and whether she got into defendant's van willingly. Further, as in *Bates*, defendant's theory here was that he never had sex with A.B. "If the jury would have believed this argument, defendant would not have been found guilty of criminal sexual assault." *Bates*, 2018 IL App (4th) 160255, ¶ 65.

¶ 77   We further find defendant's reliance on *People v. Starks*, 365 Ill. App. 3d 592 (2006), unpersuasive. In *Starks*, a postconviction appeal, defendant filed a postconviction petition alleging, *inter alia*, that a postconviction DNA test had excluded him as the source of the semen that had been found on the victim's underwear and attributed to defendant at trial. *Id.* at 596. Based on this new DNA test, defendant's counsel discovered that the State's serology test results in the original action were contrary to the trial testimony of the State's expert serologist. *Id.* The serology results actually excluded defendant as the source of the semen from the victim's vaginal swab and underwear. *Id.* The State argued that the semen found on the victim's underwear was not materially relevant to the defendant's claim of innocence and testimony on defendant's behalf was inadmissible pursuant to the rape shield statute. *Id.* at 600. The court disagreed, finding that the State improperly used the rape shield statute to bar testimony on defendant's behalf despite the fact that the victim had been impeached by her admission that she had not been sexually assaulted and the State's own expert had provided untruthful or incorrect testimony regarding the serology results. *Id.* "In effect, the State has improperly turned the rape shield statute on its head and made it a sword to thwart defendant's constitutional rights of confrontation (rather than a shield to protect the victim's past sexual history)." *Id.* The court found that all of these circumstances, taken together, resulted in a violation of the defendant's constitutional rights and were an adequate basis to reverse the circuit court's denial of defendant's postconviction petition. *Id.*

¶ 78   We find that the circumstances in the case at bar are substantially distinct from those present in *Starks*. As noted, A.B.'s prior sexual history was irrelevant to the issue of whether she consented to sexual activity with defendant. Evidence of A.B.'s prior sexual history would have been only collateral to the underlying issues raised at trial, rather than going to a direct issue in the case as in *Starks*. Further, the State did not present untruthful or misleading DNA expert testimony. As such, we find *Starks* distinguishable from the case at bar. Accordingly, we find that the trial court did not err in granting the State's motion *in limine* pursuant to section 115-7 and precluding defendant from introducing evidence regarding the unidentified male DNA samples present on A.B.'s vaginal swab.

¶ 79                                    C. A.B.'s Disorderly Conduct Charge

¶ 80   Defendant next contends that the trial court erred in precluding him from inquiring into the specific nature of A.B.'s pending disorderly conduct charge at trial. Defendant asserts that, where the charge was for filing a false police report, the jury could have drawn a reasonable

inference concerning A.B.'s bias and motive to testify falsely. Defendant maintains that A.B.'s credibility was an essential component of the case and he should have been permitted to introduce this evidence in order to impeach A.B. and challenge her credibility.

¶ 81                            1. *Confrontation Clause*

¶ 82        As discussed, the confrontation clause guarantees defendant the right to confront witnesses against him. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. This right includes a defendant's right to cross-examine a witness for the purpose of showing any interest, bias, prejudice, or motive to testify falsely. *People v. Averhart*, 311 Ill. App. 3d 492, 496-97 (1999) (citing U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8). Further, any permissible matter that affects the witness's credibility may be developed on cross-examination. *People v. Kliner*, 185 Ill. 2d 81, 130 (1998). However, a defendant's rights under the confrontation clause are not absolute. *People v. Desantiago*, 365 Ill. App. 3d 855, 868 (2006). " '[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " (Emphasis in original.) *People v. Jones*, 156 Ill. 2d 225, 243-44 (1993) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). A trial court's limitation of cross-examination is reviewed for abuse of discretion. *Kliner*, 185 Ill. 2d at 130.

¶ 83                    2. *Defendant's Contention Is Forfeited,*
                            *and Any Error Is Harmless*

¶ 84        Prior to trial, the State filed a motion *in limine* stating that A.B. had recently been arrested for disorderly conduct and charged with a Class 4 felony. The State provided that it would present that fact to the jury but sought to exclude any specific facts about the charge, including the fact that the charge was for filing a false police report. During A.B.'s direct examination, the State asked her about the pending felony charge for disorderly conduct. A.B. confirmed the pending charge but testified that she had not had any conversations with the State regarding the facts of the case and the State had not made her any promises in regards to the disorderly conduct case. In his motion for a new trial, defendant contended that the court had erred in limiting defense counsel from eliciting testimony from A.B. that the pending disorderly conduct charge was for filing a false police report.

¶ 85        The record shows, however, that defendant never raised this issue prior to his motion for a new trial. In fact, as both parties acknowledge, there is no discussion of this motion anywhere in the record. The only indication that this motion was considered before trial is a handwritten notation on the motion itself noting that the motion was "Granted." The parties argued extensively regarding the State's motion to present evidence of other crimes and the State's motion pursuant to section 115-7, but there is no argument regarding this motion anywhere in the record. This is critical because, in order for a defendant to preserve an alleged error for review, a defendant must both specifically object at trial and raise the specific issue again in a posttrial motion. *People v. Woods*, 214 Ill. 2d 455, 470 (2005). Defendant acknowledges his failure to object to the issue at trial or pretrial but contends that the issue is nonetheless preserved because the State raised it in its pretrial motion *in limine* and defendant raised it in his posttrial motion for a new trial.

¶ 86        Although there is an exception to the general rule that a defendant must object at trial in order to preserve an alleged issue for review that applies when an issue is raised in a motion

*in limine*, this exception applies only where the *defendant* raises the issue in the motion *in limine*. See *People v. Hudson*, 157 Ill. 2d 401, 434-35 (1993); *People v. Boclair*, 129 Ill. 2d 458, 476 (1989); *People v. Maldonado*, 398 Ill. App. 3d 401, 415 (2010). The defendant's failure to object at trial or otherwise raise the issue prior to his filing of posttrial motions deprives the trial court of the opportunity to correct the error. *People v. Davis*, 378 Ill. App. 3d 1, 10-11 (2007). As such, we find that defendant has forfeited this issue for review by failing to object at trial or raise the issue in a motion *in limine*.

¶ 87    Even assuming defendant properly preserved this issue and that the court erred in excluding the specific nature of A.B.'s pending charge, we would nonetheless conclude that such error was harmless beyond a reasonable doubt given the overwhelming evidence of defendant's guilt and where defendant was permitted a full cross-examination of A.B. in all other respects. See *People v. Davis*, 185 Ill. 2d 317, 340 (1998). The restriction placed on defendant's cross-examination of A.B. by the circuit court was minor in the context of this case. See *id.* ("Indeed, upon our review of the entire record, we are certain that defendant would have been adjudged guilty of the same crimes had the circuit court permitted him to mention the name or nature of the charge pending against [the witness] in Washington."). Accordingly, we find the court did not violate defendant's rights under the confrontation clause.

¶ 88                                D. Excessive Sentence

¶ 89    Defendant next contends that the trial court's 46-year sentence was excessive where defendant had no prior felony convictions, a solid work history, and family support. Defendant also asserts that his sentence is excessive given his potential for rehabilitation, as demonstrated by the friends and family who spoke on his behalf in mitigation. Defendant further contends that the State improperly relied on the incident with J.G. in aggravation despite the fact that defendant had not been convicted of that offense and maintained his innocence.

¶ 90                                1. *Standard of Review*

¶ 91    A reviewing court will not alter a defendant's sentence absent an abuse of discretion by the trial court. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A trial court abuses its discretion in determining a sentence where the sentence is greatly at variance with the spirit and purpose of the law or if it is manifestly disproportionate to the nature of the offense. *Id.* The trial court is afforded such deference because it is in a better position than the reviewing court to weigh the relevant sentencing factors such as " 'defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.' " *People v. Stevens*, 324 Ill. App. 3d 1084, 1093-94 (2001) (quoting *People v. Streit*, 142 Ill. 2d 13, 19 (1991)). In the absence of evidence to the contrary, we presume that the sentencing court considered all mitigating evidence presented. *People v. Gordon*, 2016 IL App (1st) 134004, ¶ 51 (citing *People v. Burton*, 184 Ill. 2d 1, 34 (1998)).

¶ 92                                2. *Defendant's Sentence*

¶ 93    Here, defendant was found guilty of aggravated kidnapping (720 ILCS 5/10-2(a)(5) (West 2012)), two counts of aggravated criminal sexual assault (*id.* § 11-1.30(a)(1)), and armed robbery (*id.* § 18-2(a)(1)). Each of these convictions are Class X felonies, which carry a sentencing range of 6 to 30 years' imprisonment. 730 ILCS 5/5-4.5-25(a) (West 2014). A sentence for aggravated criminal sexual assault has a mandatory 10-year enhancement when

- 19 -

the offender displays, threatens to use, or uses a dangerous weapon other than a firearm. 720 ILCS 5/11-1.30(d)(1) (West 2012). Pursuant to section 5-8-4(d)(2) of the Unified Code of Corrections (730 ILCS 5/5-8-4(d)(2) (West 2014)), defendant's two convictions for aggravated criminal sexual assault must be served consecutively. Also under that section, either the aggravated kidnapping or the armed robbery conviction would have to be served consecutively to the two aggravated criminal sexual assault counts. *Id.* Accordingly, the minimum sentence defendant could serve was 38 years.

¶ 94    At sentencing, the court stated that it had read and considered the letters presented by defendant's family and friends and read the presentence investigation report. The court also took into account defendant's statement in allocution. The court further stated it considered all of the statutory factors in mitigation and aggravation. The court then sentenced defendant to a term of 10 years, plus an additional 10 years for the mandatory enhancement, on both counts of aggravated criminal sexual assault and a term of 6 years for both the aggravated kidnapping and armed robbery convictions, for a total term of imprisonment of 46 years.[5] Thus, the sentence imposed by the court fell within the prescribed statutory range and was only eight years more than the minimum sentence.

¶ 95    Defendant contends, however, that the court abused its discretion in determining his sentence by failing to consider all of the evidence presented in mitigation. The record shows, however, that the court stated that it had considered "all the statutory factors for aggravation, mitigation," and also considered the letters defendant presented in mitigation. The record shows that, during the sentencing hearing, defense counsel identified the same mitigating factors defendant brings to our attention on appeal, including defendant's work history, rehabilitative potential, and lack of criminal background. It is not our function to independently reweigh these factors and substitute our judgment for that of the trial court. *Alexander*, 239 Ill. 2d at 214-15 (citing *Streit*, 142 Ill. 2d at 19). Although the trial court did not specifically identify which factors it considered in determining defendant's sentence, we observe that a trial court is not required to specify on the record the reasons for the sentence imposed (*People v. Acevedo*, 275 Ill. App. 3d 420, 426 (1995)), nor is it required to recite and assign value to each factor presented at the sentencing hearing (*People v. Baker*, 241 Ill. App. 3d 495, 499 (1993)). Rather, it is presumed that the trial court properly considered all mitigating factors and rehabilitative potential before it, and the burden is on defendant to affirmatively show the contrary. *People v. Brazziel*, 406 Ill. App. 3d 412, 434 (2010). Here, defendant has failed to do so. In addition, although the State alluded to the incident with J.G. in its argument in aggravation, there is no indication in the record that the court improperly relied on that incident in determining defendant's sentence. Accordingly, we find no abuse of discretion where the sentence imposed was within the prescribed statutory range, does not greatly vary from the purpose of the law, was entered after the trial court's consideration of all of the factors presented in mitigation, and is not manifestly disproportionate to the nature of the offense. *Id.* at 433-34 (citing *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)).

---

[5]The two 20-year terms of imprisonment on each count of aggravated criminal sexual assault and the 6-year term of imprisonment for aggravated kidnapping are to be served consecutively. The 6-year sentence for armed robbery was concurrent to defendant's 46-year term of imprisonment.

¶ 96                              E. Presentence Custody Credit

¶ 97    Defendant finally contends that he is entitled to two additional days of presentence custody credit. Defendant asserts that the mittimus reflects that defendant spent 1507 days in presentence custody, but defendant in fact spent 1509 days in presentence custody. The State concedes that the mittimus erroneously reflects the incorrect number of days and that defendant is entitled to 1509 days of presentence custody credit. We agree. The record shows that defendant was arrested on June 10, 2012, and sentenced on July 28, 2016. Defendant spent the entire duration in presentence custody and was thus in custody for 1509 days.

¶ 98    Previously, this court had the authority to order the clerk of the circuit court to correct a defendant's mittimus without need for remand. See, *e.g.*, *People v. Magee*, 374 Ill. App. 3d 1024, 1035-36 (2007). Recently, however, our supreme court adopted Illinois Supreme Court Rule 472(a)(3) (eff. Mar. 1, 2019), which provides that the circuit court retains jurisdiction to correct certain errors in sentencing, including errors in the calculation of presentence custody credit. The rule further provides that the circuit court retains this jurisdiction even during the pendency of an appeal. Ill. S. Ct. R. 472(a) (eff. Mar. 1, 2019). The rule was recently amended to provide that: "In all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." Ill. S. Ct. R. 472(e) (eff. May 17, 2019). Here, defendant raised this issue concerning the calculation of his presentence custody credit for the first time on appeal and his case was pending on appeal as of March 1, 2019. As such, pursuant to Rule 472, we remand the issue of defendant's presentence custody credit to the circuit court so that defendant may be allowed to file a motion pursuant to that rule.

¶ 99                              III. CONCLUSION

¶ 100    For the reasons stated, we affirm the judgment of the circuit court of Cook County and remand the cause in accordance with Illinois Supreme Court Rule 472(e) (eff. May 17, 2019).

¶ 101    Affirmed and cause remanded with directions.